WALLACE, JUDGE:
The claimant, Rose Allen, filed this claim against the respondent for damages to her home located at 57 Hanover Street in Eastview, just outside the city of Clarksburg, West Virginia. The claimant purchased the property and moved there in July of 1974. The house consisted of five rooms and a bath located on five lots. Each lot had a frontage of thirty feet on Hanover Street extending back one hundred feet, the entire parcel being 150’ x 100’. The property sloped up a hill from the road. The grass lawn around the house sloped down toward the road, and the lawn was supported by a retaining wall. Hanover Street, maintained by the respondent, is part of the “orphan roads” with no established right of way.
In the fall of 1977, the respondent pulled the ditch in front of claimant’s property. In doing so, respondent’s equipment scraped the retaining wall, knocking down a portion of it. A month or so *190 later, after heavy rains, claimant’s property started sliding in the area where the wall was destroyed. Respondent was notified.
In September of 1978, respondent pulled the ditch again, and the slide worsened. The refuse from the slide was removed by the respondent and dumped over the bank across the road. Claimant’s house began to crack and disintegrate. Part of the house pulled apart, and the roof cracked. The claimant attempted to use jacks in the basement to alleviate the damage to the house, but to no avail. The claimant was advised to, and did, move out of the house in January of 1979.
John Charles Hempel, a principal in Environmental Exploration, a geological consulting firm, testified on behalf of the claimant. He investigated the nature of the slide and its physical extent. Mr. Hempel, as well as James M. Beard, maintenance engineer for the respondent, testified that the entire hill area where claimant’s home was located was highly unstable.
Mr. Hempel stated in his testimony that, “based on our investigation, it would seem apparent and it is our opinion that the removal of the wall, the retaining wall, from in front of the house and in front of her property, would be the primary factory initiating this slide. Subsidiary factors involved in the slide would be the subsequent rains....”
Sam Paletta, claims investigator for the respondent, answered claimant’s complaint in November of 1978. He stated that he observed the slide on the left side of the house and the damage caused by it. He also stated that there were two slips on the right side of the house. He checked the records of the Department of Highways, and testified that the ditch had been pulled twice and that a portion of the wall had been knocked down. He responded to claimant’s call five or six weeks later and furnished forms to file this claim.
From the record, it is the opinion of the Court that the respondent’s removal of a portion of the retaining wall on claimant’s property, and its failure to shore up the hillside, were the primary causes of the slide. Each time respondent removed the slide refuse from the road, the situation worsened.
John M. Pierpoint, a real estate appraiser, testified that he had visited the property and examined the slide and damages to the house. Mr. Pierpoint stated that the value of the house prior to the *191 damage was $13,900.00, and the five lots were valued at $4,000.00, for a total value of $17,900.00; that the damage to the house was so severe that it could not be repaired and should be razed, and that the portion of the lots not damaged by the slide was now worth $2,000.00, if the slide is stopped. Accordingly, the Court makes an award to the claimant in the amount of $15,900.00.
Award of $15,900.00.